### PORTER v. STEGER.

Civ. Nos. 2726, 2895, 2648, 3235, 3098, 2995 and 3182.

District Court, D. Maryland.

July 22, 1947.

James S. Morrow, Jr., of Baltimore, Md., Asst. U. S. Atty., for petitioner.

John J. O'Connor, Jr., of Baltimore, Md., for respondents in Nos. 2648, 3235 and 2995.

COLEMAN, District Judge.

The matter here arises on the motion of the Government that this Court pass an order substituting the United States as party plaintiff, in place of Paul A. Porter, Administrator, Office of Price Administration, in various named cases still pending in this Court, unless cause be shown by a specified time, why such substitution should not be made.

Counsel for defendants in several of these suits, although not in all of them, has appeared and has contested the granting of the motion. The sole argument in opposition to granting it is based upon section 780 of Title 28 U.S.C.A., providing for survival of actions, suits or proceedings by or against officers of the United States. Subsection (a) of that section of the statute provides that "Where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States, * * * and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a subsantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved."

It is contended that this provision is a bar to granting the Government's motion now before us, on the ground that there has been no substitution of anyone to take the place of Mr. Porter as Administrator of the Office of Price Administration, since his future work has been transferred to the Office of Temporary Controls, but that, insofar as his duties under the suits here

involved are concerned, they were not transferred to any successor agency or any successor administrator, except insofar as they are covered by Executive Order No. 9842, 50 U.S.C.A.Appendix, § 925 note, effective June first last, entitled "Conduct of Litigation Arising Under Wartime Legislation". That order provides, insofar as it relates to the present controversy, as follows: "By virtue of the authority vested in me by the Constitution and statutes, including Title I of the First War Powers Act, 1941, and as President of the United States, and having regard to the established responsibilities and powers of the Department of Justice and of the Attorney General under the statutes of the United States, it is hereby ordered, in the interest of the internal management of the Government, as follows:

"1. The Attorney General is authorized and directed, in the name of the United States or otherwise as permitted by law, to coordinate, conduct, initiate, maintain or defend: * * *

"(b) Litigation against violators of regulations, schedules or orders relating to maximum prices pertaining to any commodity which has been removed from price control;

"(c) Litigation arising out of Directive 41, as amended, of the Office of Economic Stabilization pertaining to the withholding of subsidies because of noncompliance with or violations of control orders."

Counsel for defendants does not contend that the Attorney General would be without authority to prosecute these pending cases if there were in fact a plaintiff whom he was specifically authorized by law to represent, but contends that there having been not substituted plaintiff, the actions now stand without any moving party for the Attorney General's Office to represent and, therefore, since there are no plaintiffs, the suits cannot be prosecuted.

We feel that this argument would have much merit were it not for the provisions of the First War Powers Act, 1941, 50 U.S.C.A.Appendix, § 601 et seq., and of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq. In the first of these Acts section 1, 50 U.S.C.A.Appendix, § 601, it is provided that the President may "make such redistribution of functions among executive agencies as he may deem necessary, including any functions, duties, and powers hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer, in such manner as in his judgment shall seem best fitted to carry out the purposes of this·title, and to this end is authorized to make such regulations and to issue such orders as he may deem necessary, which regulations and orders shall be in writing and shall be published in accordance with the Federal Register Act of 1935; *Provided, That the termination of this title shall not affect any act done or any right or obligation accruing or accrued pursuant to this title and during the time that this title, is in force: Provided further, That the authority by this title, granted shall be exercised only in matters relating to the conduct of the present war.*" (Emphasis supplied.)

Section 5 of the same Act, The First War Powers Act, § 605 of 50 U.S.C.A.Appendix, provides: "All laws or parts of laws conflicting with the provisions of this title are to the extent of such conflict suspended while this title is in force.

"Upon the termination of this title all executive or administrative agencies, governmental corporations, departments, commissions, bureaus, offices, or officers shall exercise the same functions, duties, and powers as heretofore or as hereafter by law may be provided, any authorization of the President under this title to the contrary notwithstanding."

It is to be seen from the foregoing that the broadest possible powers were given to the President with respect to the functions to be performed during war-time by any of the various agencies of the Executive branch of the Government. Also, that while rights and obligations accruing under the Act were declared to survive the Act's termination, the authority granted was strictly confined to matters relating to the conduct of the war.

The following provisions of the Emergency Price Control Act of 1942, §

1(b), Section 901 of Title 50 U.S.C.A.Appendix, must be read in connection with the aforegoing: "The provisions of this Act, and all regulations, orders, price schedules, and requirements thereunder, shall terminate on June 30, 1945, or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earlier; *except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense.*" (Emphasis supplied.)

The first act from which we have quoted, namely, the First War Powers Act of 1941, must be treated as still being in effect, in view of the construction placed upon it as late as April 28 of this year by the Supreme Court in the Consolidated Cases of Fleming, Temporary Controls Administrator, v. Mohawk Wrecking & Lumber Co. (Raley v. Fleming) 331 U.S. 111, 67 S.Ct. 1129. There the Court said (page 1131 of 67 S.Ct.) in construing the provision in the Act that it "shall remain in force during the continuance of the present war and for six months after the termination of the war, or until such earlier time as the Congress by concurrent resolution or the President may designate" Sec. 401, 50 U.S.C.A.Appendix, § 621: "That power (given under the Act) may be exercised 'only in matters relating to the conduct of the present war,' § 1, and expires six months after 'the termination of the war.' § 401, 50 U.S.C.A.Appendix, § 621.

"On December 31, 1946, after the creation of the Office of Temporary Controls, the President, while recognizing that 'a state of war still exists,' by proclamation declared that hostilities had terminated. The cessation of hostilities does not necessarily end the war power."

As respects the second statute from which we have quoted, namely, the Emergency Price Control Act of 1942, it will expire, by its terms, on June 30, 1947, if not re-enacted. However, it is to be noted that the quotation, last made, from that Act, expressly provides for the survival of rights and liabilities that have accrued prior to its termination.

■ Were we here dealing merely with the question as to the right of private individuals to keep alive pending litigation under the Emergency Price Control Act of 1942, instituted before its repeal, we would have no difficulty in saying that, by reason of the last quoted provision alone, such right exists. But the matter is not so clear with respect to injunction suits, and also with respect to treble damage suits in which the Government becomes the party plaintiff by virtue of the Act. However, although the point is not free from some doubt because of the language employed in the two inter-related statutes, and also because of the very complicated circumstances which have followed the conclusion of the war, nevertheless, we believe that this doubt must be resolved in favor of the Government, in view of the quoted provisions in these two statutes, considered separately or together. That is to say, this Court is required to decide that both private and Government litigation now pending, of the character referred to, may be further prosecuted. We feel that this position is supported by the very recent decision of the Supreme Court in the Consolidated Cases of Philip B. Fleming, Temporary Controls Administrator, v. Mohawk Wrecking & Lumber Company (James G. Raley v. same), Supra.

It is true that the opinion in those cases, which upholds the substitution of Mr. Fleming for Paul A. Porter, Administrator, Office of Price Administration, is not decisive of the point here before us. Nevertheless, we believe that the construction which the Supreme Court in that case places upon the statutory provisions, which we have just analyzed, is in conformity with the broad construction which we give to them for the purposes of the present case.

To summarize and conclude: we believe, first, that section 780 of Title 28 U.S.C.A., providing for survival of actions brought by or against government officials, is not controlling of the present suit; second, that the provisions which we have quoted from the two wartime statutes, whose validity has been upheld by the Supreme Court, are so broad as to permit the continuation of the present suits, without any individual successor to Mr. Porter as plaintiff, but by the Attorney General, in the name of the United States. This is what Executive Order No. 9842 directs shall be done. We believe, for the reasons that we have given, that the Executive branch of the Government has authority to pass such an order.

I will sign an order in conformity with this opinion.